**Dennis Kirk RHEUPORT, Appellant,**

v.

**STATE of Iowa, Appellee.**

No. 2–58557.

Supreme Court of Iowa.

Feb. 18, 1976.

Philip F. Miller, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

Petitioner Dennis Kirk Rheuport appeals denial of postconviction relief. He was convicted and sentenced upon a plea of guilty to larceny of a motor vehicle under Code § 321.82 in November 1973. He was granted bench probation from an indeterminate ten-year prison sentence. In March 1974, while on probation, he was arrested and charged with another larceny of a motor vehicle offense. The violation was reported and, after hearing, his probation was ordered revoked. We dismissed his attempted appeal from the revocation order on jurisdictional grounds. *State v. Rheuport,* 225 N.W.2d 122 (Iowa 1975). He subsequently brought this postconviction action. In this appeal he attacks the revocation proceeding and the postconviction proceeding. We affirm the denial of postconviction relief.

The questions are whether the postconviction court erred in upholding the revocation of probation and followed proper procedures in the postconviction proceeding.

I. *The probation revocation hearing.* Petitioner makes seven complaints about the revocation hearing. They include allegations the trial court erred in revoking his probation (A) in allowing use of an alleged criminal act as a basis for revocation without a conviction having been obtained, (B) in revoking the probation upon inadequate proof, (C) in imposing a penalty upon him for his silence in the revocation proceeding, (D) in revoking probation in a single-step hearing, (E) in refusing to order a psychiatric examination, (F) in refusing to consider alternatives or mitigating circumstances, and (G) in failing to enter written findings.

■ A. *Absence of conviction for the alleged violation.* Petitioner was charged but not convicted of the violation for which his probation was revoked. In *State v. Hughes,* 200 N.W.2d 559, 562 (Iowa 1972), a majority of this court held it is not necessary to seek and obtain a conviction to show violation of a probation condition requiring the person to conduct himself in obedience to law; it is only necessary to establish he violated the law. Under that holding, it was unnecessary for the State to prove petitioner had been convicted of the larceny of a motor vehicle offense upon which revocation was sought.

■ B. *Proof of the violation.* In *State v. Hughes,* supra, this court also held the requisite degree of proof in a revocation proceeding is a preponderance of the evidence. The court also held strict rules of evidence in criminal trials do not apply in revocation proceedings. See *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 499 (1972). It is sufficient if the violation is established by evidence which is competent.

■ Here the *Hughes* standard was met. Although petitioner was charged with violation of three conditions of his probation, we believe the record shows his probation was revoked because of his stealing of a car. Two witnesses testified directly from first-hand knowledge to the alleged violation. One was a car salesman from whom petitioner allegedly took the car on a pretext he wanted to drive it around the block to try it out. The other was a police officer who testified he arrested petitioner driving the car two days later in another part of the city. This evidence was sufficient for the trial court to find the violation was established by a preponderance of competent evidence.

Admittedly, petitioner's probation officer was permitted to express an opinion, over objection, that she believed petitioner had violated probation. However, she had previously testified in detail to the facts upon

which that opinion was based. Although the opinion was probably superfluous, we do not believe the trial court erred in receiving it for purposes of the revocation proceeding.

■ C. *Petitioner's silence.* Although petitioner testified in the revocation proceeding, he elected not to discuss the alleged larceny of a motor vehicle. His testimony was instead directed to his reasons for not having maintained contact with his probation officer and his need for psychiatric examination. Petitioner's assertion his failure to testify about the alleged larceny offense in the revocation proceeding was held against him is based on a comment made by the trial court (Perkins, J.) in explaining his decision to revoke probation. The court said, in part, "And in this case the *other offense * * * which you've committed and have not in any way denied here,* and these witnesses came in and told the court about, certainly seems to me to be a situation that warrants revocation of your probation." (Italics added). The problem with petitioner's argument is that this comment does not establish what he claims for it; it does not show the judge penalized him for his silence. Petitioner confuses the court's remark with the kind of situation presented in cases like *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), in which comments on a defendant's silence are addressed to the jury which must pass on the defendant's guilt. Such comments infringe the defendant's privilege against self-incrimination. However, the comment here could not have influenced such a determination. In fact, it appears in a statement in which the judge told the defendant the violation had in fact been established by the testimony which was given.

Although authority exists for consideration of a defendant's silence in a revocation proceeding, *United States v. Farmer,* 512 F.2d 160, 162 (6 Cir. 1975), we rest our rejection of petitioner's contention on a finding that Judge Perkins did not in fact

penalize him for his silence in the revocation proceeding.

■ D. *The single hearing.* Petitioner contends the entire revocation proceeding concerned whether he had violated his probation and did not include a separate stage in which, once it was determined he had done so, circumstances in mitigation and dispositional alternatives would be considered. In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court held due process requires a probation revocation proceeding to encompass these two analytically distinct components but did not dictate that two separate proceedings be conducted.

Here, we find the trial court did substantially comply with the *Gagnon* mandate in revoking petitioner's probation. Evidence was not only received concerning the alleged violation of probation. Evidence was received regarding petitioner's request for psychiatric examination. The thrust of this testimony was to provide the court with evidence in mitigation or to assist it in selecting a dispositional alternative to revocation. His asserted mental aberration was the only factor in mitigation advanced by petitioner then or now.

It is obvious from the trial court's statement at the time of revocation that the hearing included and the court considered not only the first step, whether a violation had been proved, but the second step, what should be done about it:

"The reason for probation, of course, is to assist you and help you and get you straightened out when you're granted probation. The other part is that it is the opinion of the Court at that time that it is no risk to the community and that to let you continue to work in society and live in society doesn't pose any risk to the community at-large. And in this case the other offense * * * which you've committed and have not in any way denied here, and these witnesses came in and told the Court about, certainly seems to me to be a situation that warrants

revocation of your probation. It's not a pleasant task to impose a sentence like this on a young man, but I don't think I have any alternative. We wanted to see you make good, and when I gave you probation I certainly hoped that I'd never see you in this court again, but you're the guy that wrote the ticket and you made the choice, and if you need psychiatric care why I hope they give it to you up there at Anamosa and you get what help you need and * * * come back in the community the next time * * * ready to obey the rules and live up to the standard that the community expects from people. So it is the judgment and order of the Court that the probation heretofore granted this man be and it is hereby revoked and the sentence originally imposed is to be served."

We find no merit in petitioner's assertion he was denied due process because of trial court non-compliance with the *Gagnon* two-step hearing principle.

E. *Refusal of psychiatric examination.* Petitioner filed an application for psychiatric examination three days before the revocation hearing, alleging an examination was reasonable and necessary to the court's findings regarding probation revocation and was in petitioner's best interest. Evidence was received in support of this application during the revocation hearing. Petitioner contends the trial court abused its discretion and denied him due process, equal protection, and effective assistance of counsel by refusing to sustain his application and by failing to defer the revocation decision until after receipt of a psychiatric evaluation.

He argues he should be accorded the same right to offer psychiatric testimony in mitigation or to assist in selection of a dispositional alternative as a person with means. He asserts his indigency should not be permitted to deny him that right.

■ We discussed the standards applicable to determination of an indigent's application for psychiatric examination at public expense in *State v. McGhee,* 220 N.W.2d 908 (Iowa 1974). There the issue was whether the examination should have been ordered to permit the defendant to determine the feasibility of an insanity defense and to assist him with such defense. Here we are concerned with a proceeding two stages removed from trial. Petitioner was convicted and sentenced on one offense without then raising any issue regarding his mental condition. Here, by reason of an alleged repetition of the earlier offense, he was confronted with a revocation proceeding. The purpose of a psychiatric examination to shed light on the appropriate disposition in a revocation proceeding is substantially different from the purpose of such an examination in relation to a defense at trial. The court's refusal of the application must be viewed with that difference in mind. Cf. *State v. Knutson,* 234 N.W.2d 105, 107–108 (Iowa 1975).

■ Petitioner sought to support his application with testimony of his mother. She said he had two prior examinations or evaluations. One was at the Child Guidance Center in 1963 or 1964 and the other when he went to the Omaha Home for Boys in 1972. She did not say what these examinations disclosed. She did testify that someone in the Job Corps had told her defendant was a kleptomaniac and needed psychiatric help.

Petitioner's own testimony was lucid and detailed on the matters he chose to testify about. He was not asked any questions about his mental condition or about his background insofar as it might bear upon his mental health. He simply said he believed he needed a psychiatric examination and evaluation.

Petitioner's counsel recognizes this is a scant record from which to argue the trial court erred in refusing to order a psychiatric examination. He argues in effect that the absence of examination prevented him from making a better showing of necessity for examination. Although this argument

has a certain logic it does not explain the complete lack of the kind of evidence even lay witnesses ought to be able to give regarding manifestations of mental abnormality. Certainly the allegation that petitioner had stolen a motor vehicle for the second time within a year did not establish a basis for requiring psychiatric examination.

We hold the trial court neither abused its discretion nor denied petitioner his constitutional rights as alleged in rejecting his application for psychiatric examination.

■ F. *Mitigation and alternatives.* Petitioner contends the trial court denied him due process by refusing to consider evidence in mitigation of the alleged probation violation and alternatives to revocation. The short and complete answer to this contention is the fact the judge's statement at the time he revoked probation shows he did consider such matters but nevertheless revoked probation for proper reasons.

■ G. *Absence of written findings.* Petitioner alleges he was denied due process because the trial court failed to make written findings showing the evidence relied on and reasons for revoking probation until directed to do so by the postconviction court a year later. Under *Morrissey v. Brewer,* supra, 408 U.S. at 498, 92 S.Ct. at 2604, 33 L.Ed.2d at 499, a parole revocation must be accompanied by "a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole." We have held this means a court which revokes probation must make findings which show the factual basis for the revocation. *State v. Hughes,* supra, at 562.

An oral statement of such findings by the factfinder, made in open court in the presence of the defendant and recorded by a court reporter, is substantially equivalent to the written statement required by *Morrissey. People v. Scott,* 34 Cal.App.3d 702, 110 Cal.Rptr. 402 (1973). As previously shown, the trial court made such a statement when he revoked petitioner's probation in this case. We need not decide whether the written statement supplied a year later at the direction of the postconviction court would have met the requirements of due process.

We find no merit in any of petitioner's allegations of deficiency in the probation revocation proceeding.

II. *The postconviction proceeding.* Petitioner has three complaints about the postconviction proceeding. He contends the postconviction court erred (A) in refusing to appoint counsel for him, (B) in dismissing his postconviction petition without giving prior notice of its intention to do so and (C) in failing to rule separately on each ground of his postconviction petition.

A. *Appointment of counsel.* Petitioner was represented by counsel at the revocation hearing and in the postconviction proceeding. However, he filed an application for court appointment of counsel in the postconviction proceeding, alleging indigency. When the postconviction court failed to act upon this request, he later filed a request for ruling. The postconviction court again failed to rule on the request. Petitioner contends he was thus denied his right to counsel assured under the Sixth and Fourteenth Amendments of the United States Constitution and § 663A.5, The Code.

■ Section 663A.5 provides:

"If the [postconviction] applicant is unable to pay court costs and expenses of representation including stenographic, printing, and legal services, these costs and expenses shall be made available to the applicant in the preparation of the application, in the trial court, and on review."

We have held this means counsel should be appointed for indigents in the postconviction court when the circumstances of the particular case establish such appointment would be beneficial to petitioner, conducive to a just disposition of the case, and helpful on appeal. We have also held trial judges would be well advised to appoint counsel for most indigent postconviction petitioners.

*Dodd v. State,* 232 N.W.2d 472, 474 (Iowa 1975), and citations.

We agree with petitioner this was an appropriate case for appointment of counsel if he established his indigency. We assume the matter was inadvertently overlooked by the postconviction court, perhaps because petitioner was in fact diligently represented by able counsel throughout the postconviction proceeding.

▉ Under this record, no basis exists for finding petitioner was denied counsel. The only issue is whether counsel who represented petitioner should be compensated by the county. Upon remand, the postconviction court shall make a determination whether petitioner was indigent at the time of the postconviction proceeding. If he was, the court shall allow appropriate compensation to petitioner's counsel for services in that proceeding. Although compensation for services in this appeal is not presented as an issue here, the same principle will apply in relation to the appeal.

▉ B. *Notice of intention to dismiss.* Petitioner contends the postconviction court erred in dismissing his petition without prior notice of its intention to do so, as required by § 663A.6, The Code. In material part, § 663A.6 provides:

"When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to postconviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reasons for dismissal. The applicant shall be given an opportunity to reply to the proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed * * *. Disposition on the pleadings and record is not proper if a material issue of fact exists."

See *Dodd v. State,* supra.

This provision is a means for summary disposition, a method to bypass a hearing on the merits of the postconviction petition. *State v. Mulqueen,* 188 N.W.2d 360 (Iowa 1971); see *Jackson v. Auger,* Iowa, 239 N.W.2d 180, filed separately this date. Examination of the record in this case shows a hearing was held on the merits of the postconviction proceeding as contemplated in § 663A.7, The Code. The summary procedures in § 663A.6, The Code, have no application in these facts.

The petition for postconviction relief was filed February 7, 1975. An answer was filed by the State on April 9, 1975. In its answer the State admitted all the factual allegations of the petition except petitioner's claim of indigency which was denied for lack of information. The State denied the allegations of illegality which petitioner based upon the admitted facts.

The record shows the postconviction hearing was held on April 18, 1975. The State was represented by an assistant county attorney. Petitioner was present and represented by counsel. Petitioner offered six exhibits which were received by the court, including all relevant records of the probation revocation proceeding. No testimony was offered.

On May 15, 1975, the postconviction court entered a ruling on the postconviction petition in which it requested Judge Perkins to file written findings of fact and conclusions of law in support of the revocation of probation. The ruling provided, "[T]he Application for Postconviction Relief is not denied, and is subject to further proceedings in this Court *upon the record as now made, which includes the Findings of Fact and Conclusions of Law by the sentencing Judge.*" (Italics added).

The record shows that written findings of fact and conclusions of law requested of Judge Perkins had been filed in the original criminal case on April 30, 1975.

On May 30, 1975, petitioner filed a written request for ruling on his postconviction

application. In compliance with this request, the postconviction court's ruling denying postconviction relief was entered June 13, 1975.

Since the postconviction petition was heard and determined after hearing on the merits as provided in Code § 663A.7, the postconviction court had no occasion to employ the summary procedures provided in Code § 663A.6.

■ C. *Absence of specific findings.* Petitioner alleges the postconviction court violated § 663A.7, The Code, by failing to make specific findings of fact or conclusions of law on each issue raised by his petition. That section provides in material part that, "The court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented."

It is true the postconviction court's ruling did not specifically respond to each allegation of fact and law in the petition. However, the material facts alleged in the petition were admitted by the State. The differences between the parties related to the legal effect of these facts. Therefore, the postconviction court cannot be faulted for having failed to find facts which were not in dispute. The allegations of illegality in the petition were for the most part general and repetitious. Although the postconviction court's ruling did not separately respond to each allegation, we believe it did respond adequately to the underlying issues raised by those allegations. The ruling complied substantially with the requirements of § 663A.7.

We have considered all of petitioner's contentions and arguments, whether specifically noted in this opinion or not, and find them to be without merit.

Affirmed and remanded.

All Justices concur except RAWLINGS, J., who dissents.

RAWLINGS, Justice (dissenting).

Being unable to agree with the conclusion reached in Divisions IA and IIC of the majority opinion, I respectfully dissent. See dissent in *State v. Hughes,* 200 N.W.2d 559, 563 (Iowa 1972).

I would reverse and remand for further appropriate proceedings. See *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) and Standard 5.3, ABA Standards Relating to Probation (Approved Draft 1970).