262 N.W.2d 538 (1978)
STATE of Iowa, Appellee,
v.
Raymond P. BAKKER, Appellant.
No. 59146.
Supreme Court of Iowa.
January 18, 1978.
*541 Roger W. Evans, Sioux Center, for appellant.
Richard C. Turner, Atty. Gen., Faison T. Sessoms, Jr., Asst. Atty. Gen., and John D. TePaske, County Atty., Orange City, for appellee.
Considered by MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.
REYNOLDSON, Justice.
Defendant was convicted of receiving stolen property, a violation of § 712.1, The Code. The State alleged he aided in concealing stolen beekeeping equipment. From judgment sentencing him to pay a $100 fine and to serve six months in the county jail, he appeals. We affirm.
At trial the evidence supporting the guilty verdict disclosed that in May, 1975, John Kuiper of Lyon County suspected his beehives had "foulbrood" disease. He notified the state apiarist and accompanied him in inspecting the Kuiper hives as well as hives of other beekeepers in the area. While examining hives kept by defendant on Hubert Landegent's farm in Sioux County, Kuiper discovered hives recently stolen from him.
The Sioux County sheriff's office was notified and a search warrant issued. When the deputy sheriff executed the warrant he was accompanied by Kuiper and by William Verdoorn and Robert Vande Hoef, who also had sustained recent thefts of bee equipment. Among the hives on the Landegent farm each of these beekeepers identified items stolen from him. These were seized under the warrant.
*542 The search party then proceeded to the Vollink farm and later to the Loverink farm where defendant maintained hives. Upon receiving permission from the landowners, the theft victims inspected the equipment and found more stolen property.
Defendant filed a motion to suppress the seized evidence. This was overruled, as were his trial motions for directed verdict. On this appeal he asserts reversible error in four respects, separately considered in the following divisions.

I. Motions for directed verdict.

When the State rested its case, defendant moved for a directed verdict, "in that the State has failed to prove its case against Mr. Bakker. It has failed to prove the element of the case, as charged." At close of all evidence defendant's motion was grounded on State's failure to prove he "knowingly received * * * property * * * obtained by larceny."
Defendant's brief asserts the information filed against him alleged he violated § 712.1, The Code, by "willfully and unlawfully aid[ing] in concealing stolen property." Arguing the State neglected to specifically prove concealment, he contends his motions should have been sustained. Assuming these motions sufficiently raised the ground now urged, we are not so convinced.
Section 712.1 defines one crime, receiving stolen goods, which may be committed by any one of three meansbuying, receiving or aiding in concealing stolen property. State v. Sheffey, 234 N.W.2d 92, 95 (Iowa 1975). An information need not allege the means by which the offense of receiving stolen goods was committed. §§ 773.4 and 773.11, The Code; State v. Hochmuth, 256 Iowa 442, 445, 127 N.W.2d 658, 659 (1964). However, in this case, the information specified the manner in which the crime was committed. The State therefore was required to prove commission of the offense by aiding in concealment. State v. Hochmuth, supra, 256 Iowa at 445, 127 N.W.2d at 659-660; State v. Haesemeyer, 248 Iowa 154, 159-160, 79 N.W.2d 755, 758 (1956).
To establish concealment, the State was not bound to show actual hiding or secreting of the property. Proof showing defendant's acts rendering more difficult the owner's discovery or identification of his or her property is sufficient. State v. Dykers, 239 N.W.2d 855, 859 (Iowa 1976), and citations; State v. Sheffey, supra, 234 N.W.2d at 96; see State v. Houston, 211 N.W.2d 598, 600 (Iowa 1973).
Here there was evidence to support a jury finding defendant placed stolen bee equipment on various dispersed farms, commingled it with other equipment, and kept it under his management and control. Viewed in a light most favorable to the verdict, this evidence was adequate to prove defendant aided in concealing stolen property in violation of § 712.1, The Code.
The evidence was also sufficient to support a finding the State proved every element of receiving stolen property. See generally State v. Chanen, 209 Iowa 784, 785, 229 N.W. 143, 144 (1930). There was strong proof each owner could and did identify his own property because of its unique or unusual markings or construction. Guilty knowledge can be inferred from unexplained possession of recently stolen property. State v. Dykers, supra, 239 N.W.2d at 859.
We hold trial court rightly overruled defendant's motions for directed verdict.

II. Chain of custody of exhibits.

Defendant objected to admission of the various items of bee equipment alleged to have been concealed, on the ground State failed to establish a continuous chain of control over them from the time they were seized. Defendant's objections were sufficient to preserve error. See State v. Lunsford, 204 N.W.2d 613, 616 (Iowa 1973).
Failure to account for continuous custody or to negative any reasonable probability of tampering or substitution of evidence ordinarily is fatal to the State's case. State v. Weltha, 228 Iowa 519, 524, 292 N.W. 148, 150 (1940). However, in establishing *543 a chain of custody adequate to justify admission of physical evidence, the State only need show circumstances making it reasonably probable that tampering, substitution or alteration of evidence did not occur. Absolute certainty is not required. State v. Jeffs, 246 N.W.2d 913, 915 (Iowa 1976).
Trial judge determines the sufficiency of physical evidence identification in light of the article's nature, circumstances surrounding its custody and the likelihood of intermeddlers tampering with it. A more elaborate foundation is required to identify evidence that is easily substituted, such as marijuana, than is necessary to identify physical evidence with unusual characteristics, such as money, a gun, clothing and a body, or matches and glasses. State v. Ash, 244 N.W.2d 812, 816 (Iowa 1976); State v. Lunsford, supra, 204 N.W.2d at 616-617. Unless trial judge's decision to admit evidence over a chain-of-custody objection constitutes a clear abuse of discretion, it will not be overturned. Lunsford, supra, 204 N.W.2d at 617.
In this case the Sioux County deputy demonstrated an understandable reluctance to tangle with the protective bees. He sent the seized equipment to the jail garage in Vande Hoef's pickup. The sheriff testified this evidence remained in the garage under his custody. However, he could not swear others did not have access to it.
Although the State presented no direct evidence to absolutely negative the possibility someone tampered with the evidence while Vande Hoef was driving or the sheriff was not standing guard over the garage, testimony of the State's witnesses was minimally sufficient to establish the chain of custody. There was no evidence the individuals who seized the equipment or the sheriff were improperly motivated or unreliable, and no basis for believing they planned and carried out a substitution of distinctive and unusual beekeeping equipment. See State v. Mattingly, 220 N.W.2d 865, 870 (Iowa 1974). Each owner testified his equipment produced at trial was in the same condition as it was when seized.
The speculation of tampering which defendant attempted to create might have affected the weight of the evidence, but not its admissibility. See Lunsford, supra, 204 N.W.2d at 617. Trial court did not err in overruling defendant's chain-of-custody objections.

III. Rebuttal evidence.

Verdoorn's identification of his stolen equipment was based partially on the initials "GHF" (Gobelman Honey Farm) branded on the boards. He had purchased this equipment from Homer Gobelman of Oakdale, Nebraska.
Defendant testified the most recent date he could have acquired equipment so branded was in 1961 after some of his equipment being cleaned by a Sioux City concern was exchanged for other similar equipment.
On rebuttal the State called Homer Gobelman, who testified he did not acquire the "GHF" branding iron until 1962, and thereafter had disposed of branded equipment only to Verdoorn.
Defendant objected to Gobelman's testimony on the ground he was given no notice the State would call this witness, and the testimony was "beyond the realm of rebuttal." See §§ 769.4, 780.5(6), and 780.10, The Code.
Rebuttal testimony is "that which explains, repels, controverts, or disproves evidence produced by the other side." State v. Miller, 229 N.W.2d 762, 770 (Iowa 1975); State v. McCullough, 226 N.W.2d 216, 217 (Iowa 1975). Such testimony may be admitted in rebuttal even though it might have been used as part of the State's main case. The names of witnesses properly testifying in rebuttal need not be endorsed on the information. State v. Nelson, 261 Iowa 204, 208-209, 153 N.W.2d 711, 714 (1967), and citations.
Trial court has considerable discretion in admitting such evidence. State v. Hansen, 225 N.W.2d 343, 351 (Iowa 1975). Its ruling will be disturbed only upon a clear abuse of discretion. State v. McCullough, supra, 226 N.W.2d at 217.
*544 In this case Gobelman's testimony refuted defendant's claim he innocently acquired the GHF-branded bee equipment. We hold this was proper rebuttal. No § 780.10 notice was required. Trial court did not abuse its discretion in overruling defendant's objections.

IV. Motion to suppress.

After the jury was impaneled, but before testimony commenced, defendant filed a motion to suppress the evidence "derived from the search of defendant's property." Defendant alleged a violation of his constitutional rights to privacy, the search warrant carried a date subsequent to the search, the state beekeeper entered upon defendant's property pursuant to his official capacity and "therefrom derived information upon which the information for the search warrant is founded." Defendant's motion asserted this activity tainted any information so received, invalidating the warrant. He further alleged the "other two searches" were invalid because defendant did not "give his consent to the search of his private property."
Although calendar sheet entries indicate evidence was introduced in support of the suppression motion, it was not made a part of the record before us. Defendant's brief relies on evidence later adduced at trial, but no objection based on illegal search or seizure was raised when this evidence was offered. Ordinarily the pretrial suppression motion will preserve such an issue for our consideration. State v. Davis, 228 N.W.2d 67, 69 (Iowa 1975). However, we review trial court's ruling by considering the totality of circumstances disclosed by the suppression hearing evidence. State v. Knutson, 234 N.W.2d 105, 106 (Iowa 1975); State v. Boren, 224 N.W.2d 14, 15 (Iowa 1974), cert. den., 422 U.S. 1008, 95 S.Ct. 2630, 45 L.Ed.2d 671 (1975).
It is defendant's obligation to provide this court with a record which affirmatively discloses the error upon which he relies. See City of Des Moines v. Huff, 232 N.W.2d 574, 576 (Iowa 1975). While there is grave doubt any alleged error is preserved under the procedure defendant has followed, we will assume the suppression hearing evidence was similar to that presented on trial.
The State argues defendant lacks standing to challenge the search and seizure.
Standing to object to a search belongs only to the victim of illegal search and seizure. A litigant cannot invoke violation of constitutional rights of third persons. State v. Osborn, 200 N.W.2d 798, 804 (Iowa 1972). The requisite standing can be claimed by a person who:
(1) Is charged with an offense of possession,
(2) Is legitimately on the premises when the search occurs, or
(3) Has a proprietary or possessory interest in the property seized.
Brown v. United States, 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208, 214 (1973); Jones v. United States, 362 U.S. 257, 264-265, 80 S.Ct. 725, 732-733, 4 L.Ed.2d 697, 704-705 (1960); State v. Osborn, supra, 200 N.W.2d at 804.
Possession is not an essential element of the offense of receiving stolen property. State v. Schlenker, 234 N.W.2d 142, 144 (Iowa 1975). Defendant did not claim to be on the premises when the challenged searches or seizures occurred.
Thus defendant's standing must flow from a proprietary or possessory interest in the items seized. The evidence indicated defendant claimed such interests. Each owner of farm property from which bee equipment was seized testified defendant had placed and maintained the hives on his land. Defendant asserted the hives were his.
We hold defendant had standing to challenge the search and seizure.
With respect to the search warrant issued for the equipment on the Landegent farm, defendant first urged its invalidity because it was dated August 28, 1975, although the search occurred August 25, 1975. No one denies this was a typographical error. The warrant was issued prior to the search. Defendant *545 made no showing this technical error materially affected the issuance of the warrant or prejudiced his rights in any way.
In analogous cases where affidavits in support of warrants have contained substantive factual misrepresentations, courts have said if the misrepresentation was immaterial and did not affect issuance of the warrant, suppression of evidence is not justified. See Berard v. United States, 525 F.2d 319, 321-322 (8th Cir. 1975), cert. den., 425 U.S. 913, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976); United States v. Marihart, 492 F.2d 897, 900-901 (8th Cir. 1974), cert. den., 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974); State v. Iowa District Court in and for Johnson County, 247 N.W.2d 241, 247 (Iowa 1976).
We reject defendant's challenge to the warrant on this ground.
Defendant further asserts the search on the Landegent premises exceeded in scope the warrant authorization.
The fourth amendment requires that search warrants particularly describe objects to be seized. United States v. Clark, 531 F.2d 928, 931 (8th Cir. 1976). The executing officer is not permitted to seize one item under warrant describing another. State v. Hall, 235 N.W.2d 702, 717 (Iowa 1975).
But the requirements for warrants are practical and not abstract. Warrants are favored. Affidavits are tested and interpreted in a commonsense and realistic fashion. Elaborate specificity is not required. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965); State v. Wright, 244 N.W.2d 319, 321 (Iowa 1976).
The warrant before us authorized the police to search for "bee keeping hives and equipment including approximately twenty hives or swarms belonging to Bob Vande Hoef, Bill Verdoorn and John Kuiper, which swarms are white in color and some of which swarms are marked with the initials G.H.F." Only beekeeping items were seized. The record does not indicate the search was excessive in scope. Some of the hives were dismantled, but this was required because stolen parts were intermingled with other parts. The assistance of the three beekeepers in the search does not affect its validity. See United States v. New York Telephone Company, ___ U.S. ___, ___, 98 S.Ct. 364, 374, 54 L.Ed.2d 376, 391, no. 24 (1977). We find no merit in defendant's contentions in this regard.
Defendant further contends the search and seizure on the Landegent farm was illegal because the state apiarist and Kuiper were trespassing when they obtained the information upon which the warrant was based, citing State v. Hagen, 258 Iowa 196, 205, 137 N.W.2d 895, 900 (Iowa 1965). He argues the inspection was to discover stolen hives, not disease.
One of the statutory duties of the state apiarist is "to examine the bees, combs, and beekeeping appliances in any locality which he may suspect of being affected with foulbrood or any other contagious or infectious disease common to bees * * * ." § 160.2, The Code. In performance of his duties, "the state apiarist or his assistants shall have the right to enter any premises, enclosure, or buildings containing bees or bee supplies." § 160.3, The Code.
There is no direct evidence the apiarist was on the premises for any reason other than to carry out his official duties. The record discloses he entered the Landegent farm to inspect for foulbrood disease. Defendant's speculation runs counter to the rule we can presume the regularity of actions of officials in the absence of a showing to the contrary. State v. Houston, 261 Iowa 1369, 1374, 158 N.W.2d 158, 161 (1968); State v. Sefcheck, 261 Iowa 1159, 1167, 157 N.W.2d 128, 133 (1968).
Defendant makes no claim §§ 160.2 and 160.3 are unconstitutional, nor does he allege the apiarist's visit to the Landegent farm for any reason was an unconstitutional search under the rationale of Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and See v. Seattle, *546 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). Rather, he bottoms his trespass claim on the asserted ulterior motive of the apiarist, which is unsupported by the record.
We need not decide whether Kuiper was the apiarist's "assistant," which would have authorized his Landegent farm entry under § 160.3. Assuming he was not, and that he was illegally trespassing on his own initiative, the information he obtained would support the subsequent warrant. Federal and state constitutional provisions prohibiting unreasonable searches and seizures have no application to the unauthorized acts of private individuals. State v. Holliday, 169 N.W.2d 768, 771 (Iowa 1969).
We find no merit in this facet of defendant's attack on the warrant search.
Finally, we turn to the warrantless searches on the Vollink and Loverink farms.
While the fourth amendment prohibits only unreasonable searches and seizures, warrantless searches and seizures are per se unreasonable unless they come within a few "jealously and carefully drawn" exceptions. The burden is upon those seeking to apply the exceptions to prove their applicability by a preponderance of the evidence. Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); Bettuo v. Pelton, 260 N.W.2d 423, 425 (Iowa 1977); State v. Ahern, 227 N.W.2d 164, 165 (Iowa 1975).
A search of property, without warrant and without probable cause, but with proper consent voluntarily given, is valid under the fourth amendment. Permission to search may be given by a third party who possesses common authority over or other sufficient relationship to the premises. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 250 (1974); Bettuo, supra, 260 N.W.2d at 426. Common authority stems from mutual use of property by persons generally having joint access or control for most purposes. Bettuo, supra, 260 N.W.2d at 426; State v. Knutson, supra, 234 N.W.2d at 107.
In State v. Knutson, supra, 234 N.W.2d at 107, we said:
"No presumptions against the adequacy of consent are indulged. `Rather, the community has a real interest in encouraging consent, for the resulting search may yield necessary evidence for the solution and prosecution of crime, evidence that may insure that a wholly innocent person is not wrongly charged with a criminal offense.' [Schneckloth v. Bustamonte, 412 U.S. 218, 243, 93 S.Ct. 2041, 2056, 36 L.Ed.2d 854, 872 (1973)]."
The record discloses defendant informally had sought and obtained permission of Vollink and Loverink to place beehives on their respective farms. He paid no rent and had leased no particular portion of the land. Apparently he had permission to go on the premises to care for his bees and extract honey. The hives were placed in open fields. The beekeepers who went to the farms could distinguish part of their stolen property from a distance of several feet.
With respect to these searches, defendant's motion merely alleged he did not "give his consent to the search of his private property."
Under common law, this issue could have been resolved easily, for the fourth amendment protection against unreasonable search and seizure was held to extend to the house and curtilage, but not to open land. Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898, 900 (1924); Wattenburg v. United States, 388 F.2d 853, 856 (9th Cir. 1968); United States v. Romano, 203 F.Supp. 27, 31 (D.Conn.1962), cert. den., 380 U.S. 942, 85 S.Ct. 1020, 13 L.Ed.2d 961 (1965); State v. Neely, 261 Iowa 1107, 1112, 156 N.W.2d 840, 843 (1968); 79 C.J.S., Searches and Seizures, § 14, p. 791 (1952). It generally was thought Hester was drained of viability by Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 510, 19 L.Ed.2d 576, 582 (1967), where, confronted by government argument a telephone booth was not "a constitutionally protected area" the court held:

*547 "[T]his effort to decide whether or not a given `area,' viewed in the abstract is `constitutionally protected' deflects attention from the problem presented by this case. For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. (citations) But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. (citations)."
But seven years later the Supreme Court, speaking through Mr. Justice Douglas, held a Colorado Department of Health inspector, taking opacity readings of smoke from a commercial chimney, "may operate within or without the premises but in either case * * * is well within the `open fields' exception to the Fourth Amendment approved in Hester." Air Pollution Variance Board v. Western Alfalfa Corporation, 416 U.S. 861, 865, 94 S.Ct. 2114, 2116, 40 L.Ed.2d 607, 611 (1974).
Regardless of its present unresolved status, it is obvious the Hester "open fields" exception was always undergirded by an unspoken concept there could be no reasonable expectation of privacy in those situations. And there is no dispute the fourth amendment "protects people from unreasonable governmental intrusions into their legitimate expectations of privacy." United States v. Chadwick, 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538, 546 (1977); State v. Osborn, supra, 200 N.W.2d at 805.
Examining this record in light of the "legitimate expectation of privacy" standard, we find no evidence defendant had an exclusive right to any portions of the Vollink or Loverink farms. Whatever possessory interest he had, if any, was insufficient to deprive Vollink and Loverink of authority to grant consent to search. See State v. Knutson, supra, 234 N.W.2d at 107. Defendant could have had no reasonable expectation of privacy relating to these hives. He assumed the risk that Vollink and Loverink would allow others on the premises.
This determination finds authoritative support in United States v. Cook, 530 F.2d 145, 149 (7th Cir. 1976), cert. den., 426 U.S. 909, 96 S.Ct. 2234, 48 L.Ed.2d 835 (1976) (owner could consent to search of jointly used poultry house); United States v. Piet, 498 F.2d 178, 181 (7th Cir. 1974), cert. den., 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 664 (1974) (warehouse foreman with key could consent to search of warehouse where stolen goods were commingled with property of others who leased space); United States v. Martinez, 450 F.2d 864, 866 (8th Cir. 1971) (owner who had combination to padlock on garage where stolen property was stored and who used it to park car could consent to search); Weaver v. Lane, 382 F.2d 251, 254 (7th Cir. 1967), cert. den., 392 U.S. 930, 88 S.Ct. 2289, 20 L.Ed.2d 1390 (1968) (homeowner could grant permission to search room used for sleeping by defendant "on an arrangement that he would stay with them for a few days"); State v. Knutson, supra, 234 N.W.2d at 107 (lessee of house could grant permission to search corner of basement in which defendant had been sleeping); People v. Bradley, 1 Cal.3d 80, 85, 81 Cal.Rptr. 457, 459, 460 P.2d 129, 131 (1969) (defendant had no reasonable expectation of privacy relating to marijuana growing in his backyard); People v. Ortega, 175 Colo. 136, 138, 485 P.2d 894, 896 (1971) (defendant had no reasonable expectation of privacy relating to activities with marijuana in his backyard); see State v. Kramer, 231 N.W.2d 874, 879 (Iowa 1975) ("In attempting to claim items openly exposed on the exterior of his double-parked pickup carry a fourth amendment protection, defendant displays an overly-sensitized and wholly unwarranted expectation of privacy.").
We hold these searches fell within the consent exception. The motion to suppress was rightly overruled.
We affirm the judgment below.
AFFIRMED.